IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SKY ZALOUDIK,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Case No. CIV-22-777-P
                                       )
KILOLO KIJAKAZI,                       )
  Acting Commissioner of the           )
  Social Security Administration,      )
                                       )
        Defendant.                     )

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.  Administrative History and Final Agency Decision

Plaintiff protectively filed his application for DIB on May 3, 2019, alleging disability since March 4, 2019. AR 25. The Social Security Administration ("SSA") denied Plaintiff's application on October 9, 2019, *see id.*, and on reconsideration on December 6, 2019. *Id.*

Plaintiff, appearing with counsel, and a vocational expert ("VE") testified at a telephonic administrative hearing conducted before an Administrative Law Judge ("ALJ") on September 7, 2021. AR 52-93. On February 28, 2022, the ALJ issued a decision in which he found Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. AR 22-44.

Following the agency's well-established sequential evaluation procedure, the ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity since March 4, 2019, the alleged onset disability date. AR 28. Specifically, the ALJ explained:

> The claimant worked after the alleged onset date; however, this work activity is considered an unsuccessful work attempt. More specifically, the claimant earned about $174, in the third quarter of 2019, and $349, in the fourth quarter of 2019 [(AR 302)]. These amounts do not rise to substantial gainful activity levels. However, the claimant earned, from Remington Park, $3,985, in the first quarter of 2020; $6,647, in the second quarter of 2020; and $95, in the third quarter of 2020 – which, taken together, rose above the presumptive levels for substantial gainful activity [(AR 302, 383)]. Mr. Zaloudik worked at Remington Park from January 2020 through June 2020, which is about six months [(AR 383)]. Considering this, and that Mr. Zaloudik appears to have lost the job because of his alcohol use, the undersigned finds that the claimant's work activity, from January 2020 through June 2020, was an unsuccessful work attempt [(AR 940)]. The claimant also earned about $996, in the second quarter of 2021, which falls below substantial gainful activity levels.

*Id.*

2

At the second step, the ALJ found, relevant to this appeal, Plaintiff had the following severe mental impairments: cerebral vascular accident, neurocognitive disorder, anxiety disorder, and polysubstance abuse. *Id.*[1] At the third step, the ALJ found that with or without Plaintiff's substance use, these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. AR 29, 37.

At step four, the ALJ found, in relevant part, Plaintiff had the following residual functional capacity ("RFC") with substance use:

> The claimant is limited to understanding, remembering, and carrying out simple instructions and tasks. He is limited to occasional contact with the public, co-workers, and supervisors, where speaking is occasional. He is unable to adapt to changes in a work setting and would be off task greater than 15 percent of the workday.

AR 31. The ALJ also set forth an RFC for Plaintiff without substance use, removing the limitation that he would be off task for any significant time during the workday and finding Plaintiff "is capable of adapting to changes in a work setting." AR 39.

Relying on the VE's testimony as to the ability of a hypothetical individual with Plaintiff's work history, age, education, and determined RFC, the ALJ concluded that with substance use, Plaintiff could not perform any past relevant work or any jobs in the national economy. AR 36-37. By contrast, the ALJ found

---

[1] The ALJ also concluded Plaintiff suffered from certain physical severe impairments (AR 28) that resulted in physical limitations. AR 31, 39. However, as Plaintiff did not raise an issue on appeal relevant to these, it is unnecessary for the Court to address them herein.

that without substance use, Plaintiff would remain unable to perform his past relevant work, but could perform the jobs of routing clerk, merchandise marker, and power screwdriver operator, which exist in significant numbers in the national economy. AR 43-44. Based on this finding, the ALJ concluded:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR [§] 404.1520(g) and 404.1535). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR 44.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II.  Issue Raised

On appeal, Plaintiff contends the ALJ erred in finding that his substance use was material to the determination of disability.

## III.  General Legal Standards Guiding Judicial Review

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means—and means only—

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## IV.    Relevant Evidence of Record

The record is undisputed that Plaintiff suffers from drug abuse and alcoholism. Although Plaintiff alleges an onset disability date of March 4, 2019, he was able to perform substantial gainful activity from January through June 2020 working at Remington Park. AR 28 (citing AR 302, 383). However, he ultimately lost that job due to his alcoholism. AR 940. Plaintiff's parents reported that, historically, he had been unable to maintain any job due to his alcoholism. *Id.*

In August 2020, Plaintiff saw Dr. David Evans Gaston reporting abdominal pain, tenderness, distention, and admitting to heavy alcohol use. AR 602. Dr. Gaston suspected alcohol-induced acute pancreatitis and ordered laboratory tests to confirm, but Plaintiff refused due to inability to pay for the same. *Id.* Dr. Gaston encouraged Plaintiff to join Alcoholics Anonymous ("AA") and estimated Plaintiff would begin to experience alcohol withdrawal symptoms within 12 hours of his appointment due to his heavy drinking. *Id.*

Dr. Gaston's records note Plaintiff's report that he drank 12-26 beers per day, that the day before, he started at 8:00 a.m. and although he had severe abdominal pain after the first beer, he continued to drink 25 more beers throughout the day. AR 603. Plaintiff also stated that he had twice been in rehabilitation for alcoholism. *Id.* On August 28, 2020, Dr. Gaston's office contacted Plaintiff to inform him that rather than alcohol induced acute pancreatitis, test results indicated that he had acute liver injury. AR 606.

Plaintiff checked himself into a rehabilitation program on September 14, 2020, but checked himself out after three days. AR 593. He then checked himself into a different rehabilitation program on September 18, 2020, but again checked himself out on September 28, 2020. *Id.* On October 1, 2020, following fourteen days of sobriety and attending four AA meetings, Plaintiff presented to Dr. Gaston

exhibiting normal appearance, cognition, memory, and thought process. AR 593, 595.

On January 31, 2021, following ingestion of cocaine, Plaintiff's family took him to the emergency room. AR 790, 825. A CT revealed Plaintiff had suffered an intracerebral hemorrhage. AR 790-91. He underwent a craniotomy for evacuation of the hemorrhage and resection of temporal arteriovenous malformation. *Id.* Plaintiff was subsequently released to Valir Rehabilitation Hospital in light of the extreme physical care required in the immediate aftermath of his surgery. *Id.* The Hospital recorded Plaintiff's "long-standing history of alcohol abuse" and that he "has been in multiple alcohol treatment programs but has always relapsed and has never followed through with post discharge follow-up care. The patient also has a history of cocaine and marijuana use and smoke[s] cigarettes." AR 940.

In late February 2021, Plaintiff exhibited moderate cognitive impairments, displaying problems with memory, problem-solving, judgment, and executive skills, as well as poor awareness and insight. AR 941-42. By March 2021, Dr. Gaston noted Plaintiff's memory was intact and his fund of knowledge was appropriate. AR 1421.

On April 27, 2021, Plaintiff checked into Valley Hope Association for alcohol rehabilitation. AR 1391-95. However, he checked himself out against medical advice on May 5, 2021, claiming there was "too much noise." AR 642. On May 6, 2021, Plaintiff reported to Dr. Gaston that he had not had a drink since he left

rehabilitation the previous day. AR 668. Dr. Gaston noted that, having been sober for a little over one week, Plaintiff was goal oriented, displaying normal attention, perception, speech, memory, and thought content, though his affect was blunt and flat and his behavior slowed. AR  671. By May 20, 2021, Plaintiff admitted to drinking alcohol again, though allegedly to a lesser extent than previously, and his mental status remained reasonably similar to his May 6, 2021 examination. AR 635.

Dr. Molly Fernando evaluated Plaintiff's mental functioning over three separate days—August 10, 2021, September 7, 2021, and October 14, 2021—upon the request of his treating providers to "aid with diagnostic clarification and treatment planning." AR 1534-46.[2] Plaintiff reported to Dr. Fernando that he continued to consume "a beer here and there but I'm not supposed to drink anymore." AR 1535. During the examination, Dr. Fernando conducted a series of tests regarding Plaintiff's mental status, including but not limited to intelligence, reasoning, comprehension, and processing speed.  AR 1536-37. Dr. Fernando also conducted a series of tests based upon Plaintiff's "self-reporting." AR 1539-43. Dr. Fernando did not include an assessment of Plaintiff's functional abilities in her report.

---

[2] Dr. Fernando performed this evaluation over multiple days because on at least one occasion, Plaintiff became angry and left her office. She subsequently continued the evaluation on a later date. AR 1535.

On December 30, 2021, Dr. Robert Danaher performed a consultative psychological evaluation. AR 1565-72. Plaintiff reported that although "he used to drink alcohol heavily," "he has since moderated his alcohol use in light of the medications he has been prescribed." AR 1567. Based on his examination of Plaintiff, Dr. Danaher completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). AR 1562-63. He indicated Plaintiff had mild limitations in his ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions. AR 1562. He concluded Plaintiff had moderate limitations in his ability to do the same with complex instructions and a marked limitation in his ability to make complex work-related decisions. *Id.*

Additionally, Dr. Danaher found Plaintiff had moderate limitations in his ability to interact appropriately with supervisors and co-workers, and marked limitations in his ability to interact appropriately with the public and respond appropriately to work-related situations and changes in a routine work setting. AR 1563. He also stated that Plaintiff's use of alcohol and/or substance abuse was not a factor at the time of the evaluation. *Id.*

V.    Consideration of Drug Abuse or Alcoholism

The SSA will not consider an individual to be disabled if drug abuse or alcoholism ("DAA") is "material" to that consideration. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 404.1535(a). Stated another way, if a plaintiff's other impairments

would improve to the point of nondisability in the absence of DAA, the SSA will not consider him disabled and will, therefore, deny benefits. *Id.* The SSA has published a policy interpretation ruling, specifically Social Security Ruling ("SSR") 13-2P, 2013 WL 621536, setting forth a six-step process for conducting a DAA materiality inquiry.

At step one of the DAA evaluation process, the ALJ considers whether the plaintiff suffers from DAA. *Id.* If so, the ALJ determines at step two whether the plaintiff is disabled considering all impairments, including DAA. *Id.* At step three, if DAA is the only impairment, it is considered material and the application for benefits is denied. *Id.* If it is not the only impairment, the ALJ considers at step four whether the other impairments are disabling by themselves while the plaintiff is dependent on abusing drugs or alcohol. *Id.* If the impairments are disabling during drug or alcohol dependence, the ALJ determines at step five whether the DAA causes or affects the plaintiff's medically determinable impairments. *Id.* If not, the DAA is not material and the ALJ awards benefits. *Id.*

On the other hand, if the DAA causes or affects the other impairments, the ALJ considers at step six whether the other impairments would improve to the point of nondisability absent the DAA. *Id.* If the impairments would so improve, the DAA is material and the ALJ denies benefits. *Id.* If the impairments would not improve to the point of nondisability without DAA, DAA is not material and the ALJ awards

benefits. *Id.* The final steps require the ALJ to "project the severity of the [plaintiff's] other impairment(s) in the absence of DAA." SSR 13-2P, 2013 WL 621536, at *7.

VI.    <u>Analysis</u>

In the present case, it is undisputed that Plaintiff suffers from DAA and the ALJ applied SSR 13-2P in rendering his decision. In so doing, the ALJ developed two RFCs: one that included Plaintiff's DAA, and one that would apply if Plaintiff's DAA was removed. The slight difference between the two RFCs resulted in a finding that absent his DAA, Plaintiff would not meet the SSA's disability criteria. Thus, Plaintiff's challenge on appeal is limited to the ALJ's determination that absent DAA, Plaintiff's other impairments would improve to the point of not being disabled.

Plaintiff initially focuses his argument on the intraparenchymal hemorrhage, or brain bleed, he suffered in January 2021. Op. Br. at 9. He explains that following the hemorrhage and subsequent brain surgery, he displayed significant cognitive impairments. *Id.* Plaintiff essentially argues that as a result, the medical records following his surgery are more probative to his disability claim than those that pre-date January 2021 because his condition had deteriorated significantly. *Id.* at 9-10.

As Defendant notes, however, the SSA requires that an impairment rendering a plaintiff unable to perform substantial gainful activity must last 12 months or longer to consider the individual disabled. In his decision, the ALJ discussed medical

evidence dating both pre- and post-January 2021, including records that showed improvement in the months following the January 2021 hemorrhage and surgery. There is no basis for the position that the ALJ or this Court should not consider records that pre-date his January 2021 hemorrhage or limit an inquiry to only those records immediately following Plaintiff's hemorrhage and surgery.

Plaintiff next challenges the ALJ's consideration of Dr. Fernando and Dr. Danaher's reports and/or medical opinions in determining that without his DAA, Plaintiff would not be disabled. Plaintiff describes these reports as the most probative evidence in the record and asserts they indicate that "despite abstinence from substances, [Plaintiff] remained significantly impaired." Op. Br. at 12. However, as explained below, this is a mischaracterization of the contents of each of these reports.

As an initial matter, the ALJ correctly noted that Dr. Fernando's report did not contain an assessment of Plaintiff's functional limitations or ability to perform basic work activities. AR 42. As such, the ALJ was not required to consider her opinion in determining the RFC. *See Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) ("But Dr. Valette did not assign any functional limitations to Ms. Paulsen other than to mention that Ms. Paulsen '*probably* has difficulty with concentration and remembering because of attention problems.' Accordingly, the ALJ was not required to consider Dr. Valette's opinion in formulating Ms. Paulsen's RFC."

(citation omitted)); *Glenn v. Saul*, No. 19-cv-383-STE, 2020 WL 1333167, at *5 n.6

(W.D. Okla. March 23, 2020) (holding the ALJ was not required to consider a

physician's report that largely consisted of a narrative of "Plaintiff's subjective

reports, a summary of medical records, and a summary of test results," because the

report did not assign any functional limitations to the plaintiff); 20 C.F.R. Section

404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources

that reflect judgments about the nature and severity of your impairment(s), including

your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical and mental restrictions.").

With regard to Dr. Danaher, the ALJ thoroughly discussed this report and

opinion in the decision, concluding that it was persuasive in part. AR 43. After

reviewing Dr. Danaher's functional assessment, the ALJ explained:

> Dr. Danaher's opinion is consistent with the medical evidence of
> record, with regard[] to periods during which the claimant consumes
> alcohol, and is therefore, persuasive, with regard[] [to] these periods.
> However, during periods of sobriety, the claimant has exhibited
> considerably less clinical defects in mental functioning, but rather
> generally exhibited cooperative behavior and normal judgment.
> Therefore, Dr. Danaher's opinion with regard[] to the marked
> limitations he assessed in the claimant's ability to adapt to work-related
> situations and his ability to interact with the public[] is unpersuasive[]
> regarding the period when the claimant is not using alcohol. Dr.
> Danaher also concluded that the claimant's condition is not expected to
> change or improve significantly over the next 12 months [(AR 1570)].
> This statement appears inconsistent with the overall evidence of record,
> as the claimant's treatment providers and examiners have generally
> concluded that his mental well-being will improve upon alcohol
> cessation. Moreover, the claimant has been able, during the

relevant period (more specifically, from January 2020 to June 2020), to work full-time, and this work would have been counted as substantial gainful activity, but for the claimant's history of alcoholism. Therefore, as the medical opinion of Dr. Danaher is not entirely consistent with the evidence of record, his opinion is not entirely persuasive.

*Id.*

Plaintiff contends the ALJ erred by characterizing both Dr. Fernando and Dr. Danaher's reports as having been completed during a period of "active alcohol consumption." Op. Br. at 13 (citing AR 30). Plaintiff states, "Indeed, the ALJ cited to Dr. Fernando's report in support of the finding that 'during periods of active alcohol consumption, based on the record, the claimant has exhibited oppositional and frustrated behavior.'" *Id.* (citing AR 30). Essentially, Plaintiff argues the ALJ should have concluded that during each examination, Plaintiff was in a period of sobriety and therefore, the results of each were reflective of his status while abstinent from alcohol.

The assertion that these examinations occurred during a period of abstinence from alcohol is simply inaccurate. As previously discussed, Plaintiff reported to Dr. Fernando that he consumes "a beer here and there" in spite of the fact that he was not supposed to drink any alcohol. AR 1535. Moreover, Plaintiff told Dr. Danaher that he had merely "moderated his alcohol use." AR 1567. Rather than being abstinent from alcohol, Plaintiff was merely drinking less.

14

SSR 13-2P does not permit an ALJ to find that a period of less drinking is a period of abstinence from alcohol. In fact, SSR 13-2P specifically directs the ALJ to assess a period of abstinence that lasts long enough in duration for the effects of drugs and/or alcohol to have abated. SSR 13-2P, 2013 WL 621536, at *12. Thus, contrary to Plaintiff's characterizations, for purposes of disability determination, these reports are not reflective of Plaintiff's mental functioning while in a period of abstinence and the ALJ did not err in comparing Dr. Danaher's opinion to Plaintiff's functioning during actual periods of abstinence.

Applying SSR 13-2P, the ALJ specifically considered Plaintiff's functioning during periods of abstinence. In November 2020, following 30 days of sobriety, Plaintiff exhibited normal attention, perception, speech, behavior, thought content, cognition, memory, and judgment. AR 39 (citing AR 590). The ALJ further noted that in April 2021, following 14 days of sobriety, Plaintiff, though presenting as anxious with blunt affect and slow behavior, again exhibited normal attention, speech, memory, and cognition, and was goal oriented. AR 40 (citing AR 671).[3] The ALJ also specifically noted that Plaintiff's mental status at that time appeared similar

---

[3] The ALJ also observed that as late as December 2021, when Plaintiff had merely decreased his alcohol intake but was not abstaining, "Plaintiff appeared alert and oriented, with logical, goal-directed thought processes. He also presented as fully intelligible, except for a mild speech impediment." AR 40 (citing AR 1565).

to examinations in May and July 2019, well before January 2021. AR 40 (citing 488, 492, 500).

    "Social Security Ruling 13-2p recognizes Plaintiff's case represents one of the most complicated scenario[s] in DAA cases, namely, the determination of whether an impairment would be expected to improve to a non-disabling degree if [Plaintiff] ceased substance use." *Jessie L. v. Kijakazi*, No. 20-cv-9305-DMR, 2022 WL 2222964, at \*16 (N.D. Cal. June 21, 2022) (quotations omitted). Here, the court recognizes that the evidence was subject to multiple reasonable interpretations regarding the degree to which Plaintiff's mental status improved when not considering his DAA. In the end, Plaintiff disagrees with the conclusions drawn by the ALJ, but his disagreement is centered on arguments that would impermissibly require this Court to reweigh the evidence. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (recognizing that much of the medical evidence was in conflict but the ALJ weighed all the evidence in reaching his decision, and the court could not "now reweigh that evidence and substitute [its] judgment for his"). *See also Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments], Mr. Alarid is asking us to reweigh the evidence, which we cannot do."); *Taylor v. Astrue*, 266 F. App'x 771, 777 (10th Cir. 2008) (recognizing that case was not "clear-cut" and that the claimant "certainly adduced evidence

consistent with [a physician's] functional limitations" but the ALJ complied with the regulations in weighing the medical opinions, his decision to reject that opinion was supported by sufficient evidence and "it is not the province of th[e] court to reweigh the evidence").

The ALJ specifically relied on evidence in the record indicating that during periods of sobriety, Plaintiff's mental status sufficiently improved to prevent him from being off task a significant portion of the day and able to adapt to changes in a work setting, the material difference between Plaintiff's RFC with and without consideration of Plaintiff's DAA. The ALJ's decision is supported by substantial evidence and was made pursuant to proper legal standards. Accordingly, Plaintiff's assertion of error is without merit.

VII.   Conclusion

Based on the foregoing analysis, the decision of the Commissioner is affirmed. Judgment will issue accordingly.

ENTERED this ___13th___ day of July, 2023.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE